In this case, Your Honor, we have a slightly similar situation, albeit not quite as egregious, I would say. We have a situation where the underlying rejection of the claim was based upon one grounds by the examiner. And again, we addressed that point. We formulated in the appeal the way that we understood it. It was presented that way. The examiner confirmed his understanding of the rejection and responded to it. Just to make sure I'm dealing with the right, this is the written description question, not coming from a cue, is that what you're talking about? You're correct, Your Honor, yes. Okay. I apologize, it's three cases and the claims kind of get mixed up a little bit. No, that's why I just wanted to follow up. Yes. This is the instance where the pivotal question was, what is he really objecting to? Is he objecting to the fact that he can't find an instance in which something is removed from the subscriber's cue? Or is he objecting to the fact that he can't... Removal based on comparison. Correct, Your Honor. Or removal based upon comparison, exactly. And so the board's opinion affirmed there were multiple grounds of rejection. The board only affirmed that part of its decision and said, well, again, you misread his rejection. What's wrong with what the board did here? They found insufficient written description because all they had in the spec was talking about bumping in the context of shipping delivery and they didn't find that sufficient. Why are they wrong? Your Honor, I would point you to the briefs which indicate that the board itself said the examiner was wrong in that point, that the specification, original claims do show that things are removed from the subscriber's cue. And again... And the original claim did. I'm sorry? And the original... The original claim, in fact, said that. But not based on comparison. But not based upon a comparison, exactly, Your Honor, yes. So when we amended the claim and we submitted the new claim, the examiner objected to it. We wrote the appeal and said, look, as far as we can tell, the issue between us is the following. You disagree that it shows something being removed. We don't understand that because, again, it wasn't the original claim. But, Your Honors, if you read the appeal brief and read the examiner answer to which we include in our brief over and over and over again, his point repeatedly is, I don't see where something's taken out. I don't see where something's taken out. I know, but let's get a little bit away from our time process and just tell us where the board erred in its opinion. The board erred because the claim, I'm sorry, the specification does show comparing. How? In the following way, Your Honor. The specification talks about a situation where the user or subscriber has an account of some kind. And in that account, they have a variety of different media titles. In the background, there's some logic. Do you want to tell us where in the specification that is? Yes, Your Honor. Because that's what this is all about. Correct, Your Honor. And we, in fact, created a little mini-synopsis of that. But on page 22 of the brief, for example, of the original brief, there are two points in the specification. Okay, I'm sorry, Your Honor. This is figure... It's going to be figure two, Your Honor, once I can... And you're going to give us the page number, 81? I'm sorry, Your Honor? Figure two is page 81 of the appendix. Okay. You're ahead of me, Your Honor. Okay. So what we did was, for purposes of trying to illustrate this a little bit more clearly for this Court's benefit, is we pointed out that in figure two, there's a variety of different scenarios by which the user can control the content of their subscriber selection queue. And you will see that in the bottom left-hand corner of box 240. One of the things the system does is it figures out, is there something that you might want us to bring to your attention every once in a while, okay? And let you know about it, and maybe put it in your queue, okay? So, and how do I go about doing that? I look at your prior ratings, I look at your prior rentals, okay? So the decision about whether to put something in or take something out is based upon looking at what you've done in the past. Your Honor, I think what it mentions is the original claim mentions specifically removing titles, and the removing step was done, and I'll go back to the original claim. Page 75 of the appendix, the original claim. Thank you, Your Honor. Part one of the claim, I'm sorry, limitation C of the claim says monitoring the subscriber rental queue in accordance with said queue monitoring control rules determined that the change should be made to a composition and or ordering. And then after that, it says D automatically selecting something to be added or removed. Now the monitoring step, which is talked about in limitation C, is part and parcel of what's going on in figure two. Namely, I'm looking at your queue, I'm looking at what's in there, I'm comparing the thing that I think you might want against things which are already in your queue right now. And so we felt that it was pretty apparent to a person's skill in the art that when you look at what part C already said, and if you read the rest of the disclosure about what's going on in figure two, this notion of looking at what's there and comparing what I think you might want inherently involves some kind of comparison operation. Again, I read the board as relying on what I'm going to describe as a procedural ground. Entirely or mostly, or at least one of the rest. It said, we can tell pretty plainly that the examiner said what I can't find written description support for is not removal all by itself, but removal based on comparison. And you, in your appeal brief, in the argument section, never responded to that. That all by itself leaves the examiner's rejection on that ground unresponded to and standing whether or not had it been contested in the argument section of your brief, we would agree with it. Can you respond to that? I think your honor is mostly correct in that point, and that was part two really of what we were disputing about the board's opinion. The board basically said, you misread the examiner's rejection. We read it to be this. And by the way, now that you're complaining about it and pointed out to us information you believe is germane to the question, we're telling it to your face. We're not even going to look at that information. To which we said why? And they said, well, that was not in the argument section. That was part two of what was mentioned in our original brief as being a grounds for error here. Why is that a perfectly legitimate process ground? If you're going to seek to overturn the examiner's rejection of a claim and the examiner gave ground A, which is sufficient for rejecting that claim, you have to make the argument on ground A in the argument section of your appeal brief. Your honor is correct to some extent, but only in the instance of saying that the board is not obligated to look at the entire appeal brief. By that logic, the board was not obligated to look at the summary description of the subject matter, which was in the appeal brief. But we get briefs all of the time that in the background section, the various sections before argument, tell us all kinds of things that might be useful as context, but what matters is what the arguments are that are being made. The formatting of the brief of this court is slightly different, and I don't believe this court would have said in an opinion, for example, you put facts in the background, we're not going to look at those facts as part of your argument. I don't believe this court would be that arbitrary. And I believe in this instance, the Board of Appeals is being very arbitrary when it says on a question of written description, which that's the key point, we're not going to bother looking at the disclosure you provided within the appeal brief itself, which is required by the rules, by the way, to be there, and not consider that. I just think that that point is not well taken. I think, and I was not able to fully document this, but the Board of Appeals did ask at that to be an official rule, that it could not be considered. I was not able to follow the trail of an entire legislation, but it was not passed. That point was not adopted. The Board was not allowed to say, there's parts of the brief we're going to look at and parts that we're not. So that is an important point. But beyond that, as I said, I think that the Board's interpretation of the rejection is completely out of line with the rest of the character of the rejection. I think after 30 years of doing prosecution, I have a fairly good understanding and feel for what a rejection is. And when I repeat that to the examiner, and the examiner repeats that back to me in the answer, and I file a rebuttal brief, and we're all copacetic about what the rejection is, but then I get an appeal decision which says, no, you completely misunderstood him. Again, I think there's something fundamentally wrong with that point, and I don't think it was appropriate. The question about Alice again comes up in connection with this case. And again, I won't go into it fully here, except to say that as with the other claim, I think that for the most part, what we pointed out in this instance was that this notion of where the logic talking to other modules, this working behind the scenes for the user as an agent, we think that those are all things which are perfectly acceptable and perfectly well within the realm of ambit of one-on-one subject matter. With that said, I will finish. May I please report? I think the court understands that the examiner issued a clear rejection, which was not addressed by... Notwithstanding it never having been relied on below. Is that just part of the process now? I don't know that it's being added in each appeal, Your Honor, but in this instance, we wanted to present the court with notice that we were familiar with the Alice issue, potential issue in this case, and we also wanted to give Gross an opportunity to respond. Well, yeah, it's an opportunity, I guess. I mean, what he's got is an opportunity in a limited page count for purposes of responding to the whole appeal, and then you present this new issue, and yeah, I guess that's an opportunity if one could consider that, but anyway, it's a little troubling, but go ahead. Yes, Your Honor. Here, the examiner's rejection was clear. The examiner stated that he could not find any descriptive support for the removal based upon some form of comparison. Do you happen to have a JA page for the clearest statement by the examiner to that effect? Yes, Your Honor. So there are two places. First is in the final rejection, which is located at A120, 121, and the second is in the examiner's answer, which is located at 192, 193. The examiner has reviewed these sections and does not see where it has been disclosed that an item is actually removed from the queue based on a comparison step, as claimed. That's correct, Your Honor. So what happened here is that Gross submitted an amendment in which he indicated certain sites, which actually, which he alleged, supported the new amendment, and those which are all noted there in the rejection. And the examiner said, well, I looked at those different paragraphs, but I don't see where there's any support for this new amendment. He went on to say that he actually conducted a text search of the entire specification and couldn't find where the word removal and comparison were associated with one another. Well, except on the figure two on A81, it says replace the next item to be shipped. Yes, Your Honor. Isn't replacing close to removal? Your Honor, the question for written description is not whether or not it's closed or it would provide an obvious over what is described. The question is whether or not there's sufficient disclosure there for one to believe that the applicant actually possessed the claim to mention. Well, wait a minute. When you look at this box here, and it says when queuekeeper finds a better title, I want him to replace the next item to be shipped. That seems like a removal, particularly when you look at the other choices, which are presumably alternatives, which is put it in the queue in order after my current choices. So that's kind of arguably a bumping thing, or you say it's bumping, which is just move it in the order. But that suggests, does it not, that replacing means taking it out and putting something else in? No? I don't think so, Your Honor. I think that what it's getting at there is simply shipping order. What item will actually be shipped next? Whether or not it's the user's preference, which should be shipped next, or whether or not the recommended DVD should be shipped next. And presumably, you would also say that it's not on the spec, it's not on the written material. That's correct, Your Honor. There's nothing in the specification that expressly describes 250, which is figure 2, which the court was just reading at 881, as removal based on some form of comparison. And that's what's key, because that's the amendment that Gross submitted to the office. It's not merely whether or not a DVD can be removed. The amendment was removal based upon a comparison. On the comparison side, just again focusing on figure 2, better title sounds like a comparison. I can't say that that's the case, Your Honor, because when you look at the actual description itself, there are very few instances in which the word comparison or some formulation thereof is actually used. Yeah, but better, isn't that a comparative? You are doing a comparison when you say A is better than B. This title is better than something else. I'm not sure what else that could be. It seems to me that's not really what's missing from figure 2. The argument is that what's missing is that replace the next item to be shipped doesn't clearly say take it out of the queue altogether, but take it out of its priority slot. I think that's correct, Your Honor. It's a matter of whether or not figure 2 is talking about taking the current DVD out of its priority slot, whether or not it should actually be shipped next, or whether or not it should be held until after the recommended title is actually shipped. There's nothing in figure 2 to indicate that what is actually taking place is some form of removal itself based upon a comparison that's taking place. When you look at the specification, the only instance that the word compare is used is at A49, and that comparison language is related to whether or not the next DVD should be shipped. It gets to the whole idea of a shipping order, whether or not the user's DVD should be shipped or whether or not the recommended title should be shipped. That's the only location that the specification actually talks about comparison. And when Gross was just up here now and asked, well, give us your best location that supports the amendment, he said that, well, he thinks that figure 2 inherently involves some form of comparison, but that's not the test for written description. It's not whether or not a figure is an obvious variant of what is being claimed. The hallmark for written description is disclosure, and the idea is whether or not one of ordinary skill in the art would actually think that the claimed invention was actually in the possession of the inventor. And there's nothing in figure 2 or anywhere else in the specification that would actually establish that Gross was in possession of removal based upon a comparison. Again, the examiner did a text search to try to find some sort of connection between the word removal and comparison, and he couldn't find one. And he pointed that out in the rejection, and he concluded that because he couldn't find any written descriptive support for the amendment, that he thinks that the amendment constituted new matter. Gross had an opportunity to argue this point before the board, and he failed to do so. If there are no further questions. Thank you. Thank you, Your Honors. Again, I would only like to point out that I understand the solicitor's position about the interpretation by the board of the examiner's rejection. I would only ask that the court look at, for example, page 15 of the brief as submitted, which pulls out from the entirety of the record the repeated comments by the examiner of what his real objection was to the claim. Well, what about the sentence that I read aloud from page A120, the examiner's rejection? The examiner has, this is as the applicant has stated, paragraph 65 and the five others support what's claimed. The examiner has reviewed these sections and does not see where it has been disclosed that an item is actually removed from the queue based on a comparison step as claimed. That seems extremely clear. Your Honor, but Your Honor is reading from the final office section. You're not reading from the appeal brief. In the appeal brief, the examiner is much more categorical about what his real objection is. And in the appeal brief, as we mentioned on A168, what we mentioned at the very top was the sole disagreement with the examiner revolves around the adequacy of the description and whether it discloses that items can be automatically removed from a subscriber rental queue. That was it. The examiner's response is on page A206 where he says response to argument. The examiner still takes the position that the limitation that the media titles can be automatically removed from subscriber rental queue is directed to new matter that is not supported by the originally filed disclosure. And it goes on from there. And again, in my brief, I give you five or six different instances. He says over and over again, there is no discussion of any media titles being removed from any queue. Where is the support and specification for the actual removal of the item? These are in my brief. I don't want to fill this record with that. But the point is that he was unequivocal about what his real issue was. The board found he was wrong. That should have been the end of the story. But the board gave their own interpretation, which was not consistent with his rejection. The question that the Chief Judge asked about the claim, I'm sorry, the specification in Figure 2. The figure definitely talks about replacing items. The attended disclosure in the specification also talks about that point. And we believe that married with the original claim language, which said, by the way, you're going to be removing things. We think that that was pretty clear about what was going on. There was a comparison going on. In some instances, you are going to remove things. The comparison operations are alluded to throughout the specification because of the following. Recommendation systems, as are discussed in the specification, create predictions for people. They figure out what you're going to give as a rating to a particular item. So the recommender system, which is talking here, will say, for example, that you're going to like the movie Fargo. You're going to give it a score of 10. It then says, okay, I've determined that that's what you're going to give that movie. Let me go back now and see what other things you've got in your queue and whether there's something in there which is lower than that. So that's why I'm saying that a person's skill in the art of reading is to understand that given the fact that recommendation systems create scores, create predictions, create ratings. It's looking at those against the ratings, which are mentioned specifically in the specification, that the user gives to the items. Thank you.